NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0179n.06

No. 10-5129

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Feb 13, 2012*

LEONARD GREEN, Clerk

BENCH BILLBOARD COMPANY,               )
                                       )       ON APPEAL FROM THE
        Plaintiff-Appellant,           )       UNITED STATES DISTRICT
                                       )       COURT FOR THE EASTERN
        v.                             )       DISTRICT OF KENTUCKY
                                       )
CITY OF COVINGTON, KENTUCKY; TRANSIT   )       **OPINION**
AUTHORITY OF NORTHERN KENTUCKY,        )
                                       )
        Defendants-Appellees.          )
                                       )

Before:  WHITE and STRANCH, Circuit Judges, and COHN,[*] District Judge.

**HELENE N. WHITE, Circuit Judge.**   Plaintiff Bench Billboard Company appeals the

district court's dismissal of its First Amendment and Equal Protection claims against Defendant

Transit Authority of Northern Kentucky for lack of standing.  BBC also appeals the dismissal of its

First Amendment and Equal Protection claims against Defendant City of Covington, and the district

court's declaration that Covington Ordinance O-2-09 is constitutional.  We **AFFIRM**.

**I.**

Bench Billboard Company (BBC) installs advertising benches on both public and private

property in Kentucky, usually near bus stops.  After Defendant City of Covington (Covington)

removed a number of BBC's benches from Covington's public rights-of-way pursuant to its

_____

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

ordinances, BBC brought suit against Covington, challenging several ordinances as violative of BBC's Free Speech and Equal Protection rights. BBC later added as a defendant the Transit Authority of Northern Kentucky (TANK). TANK operates buses in Covington and environs. The district court's opinions thoroughly set forth the facts, *Bench Billboard Co. v. City of Covington, Ky.*, No. 06-75-DLB, 2009 WL 580213 (E.D. Ky., Mar. 4, 2009), and *Bench Billboard Co. v. City of Covington, Ky.*, 2010 WL 420064 (E.D. Ky., Feb. 1, 2010), which we repeat herein only as needed.

## A. Cross-motions for summary judgment

TANK moved for summary judgment on the basis that BBC lacked constitutional standing to assert its claims. BBC filed a cross-motion for partial summary judgment, seeking a declaratory judgment that TANK's conduct violated its First Amendment and Equal Protection rights; preliminary and permanent injunctive relief requiring TANK to affirmatively allow placement of BBC's bench billboards at bus stops in Covington and throughout Northern Kentucky; and a declaration that TANK is liable for BBC's damages.

The district court granted TANK summary judgment, holding that BBC failed to establish several requisite elements of standing (injury-in-fact and redressability), and that it was thus without subject-matter jurisdiction to hear BBC's claims. The court denied BBC's motion for partial summary judgment.

This court reviews *de novo* a district court's determinations on cross-motions for summary judgment. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007). When reviewing a grant of summary judgment on cross-motions, this court applies the same legal standards as the district court: "whether, with the evidence viewed in the light most favorable to the non-

2

moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *In re Arctic Exp. Inc.*, 636 F.3d 781, 791 (6th Cir. 2011).

Courts must decide jurisdictional issues as a threshold matter. *Steel Co. v. Citizens for a Better Environment*, 532 U.S. 83, 94-95 (1998). The requirement that a claimant have standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 733-34 (2008). The party invoking federal jurisdiction bears the burden of establishing standing. *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002).

> To meet the "irreducible minimum" requirements of constitutional standing, plaintiffs must demonstrate (1) that they "have suffered injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 [] (1992) [], (2) that a causal link exists "between the injury and the conduct complained of," *id.* – i.e., that the "injury . . . fairly can be traced to the challenged action of the defendant," *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 [] (1976), and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," *Lujan*, 504 U.S. at 561 []. Each requirement is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.*

*Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 461 (6th Cir. 2007).

**B.**

BBC argues that it suffered a concrete and particularized injury from TANK's prohibiting BBC from placing its bench billboards at TANK bus stops. BBC challenges the district court's determination that TANK did not refuse to allow placement of, or ban, BBC's bench billboards at TANK bus stops, but rather, simply failed to respond to BBC's two letters.

3

BBC acknowledges that TANK played no role in the enactment of Covington, Ky., Ordinance O-48-05, pursuant to which Covington removed BBC's bench billboards from public rights-of-way. Nonetheless, BBC maintains that, since TANK is exempt from local zoning regulations under Kentucky law, TANK could have circumvented O-48-05 by adopting BBC's benches as TANK's own. As discussed below, the record evidence is to the contrary.

Moreover, TANK's failure to respond to BBC's letters was not equivalent to TANK banning BBC benches from its bus stops. As explained below, TANK has no process by which it permits private advertising benches at its bus shelters and BBC was aware from prior dealings with TANK (as opposed to with Covington) that it did not need TANK's permission to place bench billboards at TANK bus stops. In sum, BBC's injury – Covington's removal of BBC's benches from public rights-of-way including in the area of TANK bus stops pursuant to a Covington ordinance – is not fairly traceable to TANK.

BBC's first letter to TANK stated that it wished to install four BBC benches at three locations in Covington, R. 88-2, and the second letter advised TANK of BBC's "ongoing effort to install" 350 benches at transit stops throughout Boone, Campbell, and Kenton counties, R. 88-3. BBC's second letter requested that TANK describe its process to obtain the necessary approval, permit(s) or license(s) to install benches. However, BBC does not dispute the district court's determination that BBC was aware from its prior dealings with TANK that *BBC did not need permission from TANK* to place benches at TANK bus stops.

BBC also protests that "[a]t the time BBC was attempting to have TANK put its stamp of authority on the placement of [BBC's] advertising benches at TANK bus stops, TANK was placing third-party advertising on its bus shelters." Pl.'s Br. at 20. The flaw in this argument is that BBC

4

presented no evidence that TANK had authority to permit private corporations to install bench billboards at TANK bus stops that would be exempt from local ordinances like O-48-05 by virtue of TANK's status as a public utility.

In fact, the record evidence supports that TANK cannot authorize placement of *privately owned* benches at TANK bus stops. "TANK admit[ted] that it has sought and obtained permission of various municipalities throughout Northern Kentucky for the placement of *its own* benches and bus shelters." R. 87-2 at 10 (emphasis added). With respect to Covington specifically, TANK disclosed that it

> has placed its own blue steel benches at certain bus stops. These are not advertising benches . . . The placement of these benches was with permission from the City after application therefor. With regard to the other areas of Northern Kentucky, TANK follows the same procedure . . . . Whenever it places a bench at a bus stop, it requests permission from the applicable city or county where the stop is located. TANK is aware that Bench Billboard has placed its benches at various bus stop locations around the area. Such has been done by the Plaintiff without TANK's involvement or consent.

*Id*. at 16. Although there was no evidence that TANK could authorize private corporations to install bench billboards at TANK bus stops that would be exempt from local ordinances, "TANK has never objected to the placement of advertising benches in either Covington or Northern Kentucky." *Id*. at 17.

Because BBC produced no evidence that TANK (as opposed to Covington) took any steps to remove or prohibit the placement of BBC advertising benches at TANK bus stops, BBC failed to demonstrate an injury in fact directly traceable to TANK, depriving it of constitutional standing to assert its claims against TANK.

5

The district court properly granted TANK's motion for summary judgment because BBC failed to establish an injury in fact, one of the irreducible requirements of standing. *Midwest Media Prop.*, 503 F.3d at 461 (noting that each of the "irreducible requirements" of standing is "an indispensable part of the plaintiff's case").

## II. Issues Pertaining only to Defendant City of Covington

Neither party takes issue with the district court's background summary in its opinion ruling on BBC's and Covington's cross-motions for summary judgment:

> On August 26, 2005, the City of Covington enacted Ordinance O-48-05 which regulated the placement of "encroachments" in the public rights-of-way. By its terms, O-48-05 specifically prohibited the placement of advertising benches in the public rights-of-way unless the person seeking to install the bench first obtained a permit and/or franchise agreement from the City of Covington.

> Following the enactment of [] O-48-05, the City advised all owners of advertising benches located within the City that their benches, as violative of the encroachment ordinance, must be voluntarily removed, or they would be confiscated by the Covington Public Works Department. (Doc. #73, Ex. I). All of the bench owners complied with the City's request – except Bench Billboard. *Bench Billboard protested, and attempted to find a way around the ordinance by moving several of its benches onto private property, removing others from the City of Covington, and requesting that the City grant it a franchise agreement under the Ordinance.* Bench Billboard's efforts were unsuccessful; in October 2005, the City confiscated any remaining benches that Bench Billboard had failed to voluntarily remove and placed them in a storage facility. (Doc. #73, Ex. K).

> In addition to requesting the removal of all advertising benches from Covington's rights-of-way, the City also contacted the Transit Authority of Northern Kentucky (TANK) – a Kentucky public utility which provides mass transit services to Boone, Campbell and Kenton counties as well as downtown Cincinnati – and *requested [that] TANK comply with the encroachment ordinance by removing all advertising panels from its bus shelters located within the City of Covington.* After determining that very little income was generated from the advertising panels in question, *TANK agreed to voluntarily cease placing paid advertisements on its bus shelters* in Covington. However, TANK made clear to the City that its actions were purely voluntary, asserting that, as a public utility, it was exempt from complying

6

with municipal zoning laws which attempt to regulate the placement or characteristics of TANK's service facilities. (Doc. #73, Ex. N).

The City also requested that TANK place new benches at several of its high-traffic bus stops in Covington. TANK agreed, purchasing new painted metal benches that had the logo "TANK" worked into the metal back of each bench. Over thirty of these benches were placed at TANK bus stops throughout Covington, several of them replacing Bench Billboard advertising benches previously removed by the City. (Doc. #79, 29:3-30:5; 65:8-66:5).

Bench Billboard commenced the instant action against the City of Covington on April 6, 2006, alleging that Ordinance O-48-05 violated Bench Billboard's rights under the First and Fourteenth Amendments of the United States Constitution (and analogous provisions in the Kentucky Constitution), and seeking relief under Section 1983 . . . . Since commencing this action, Bench Billboard has continued to place its advertising benches on sidewalks throughout the City of Covington.

On January 20, 2009, the City repealed Ordinance O-48-05, and adopted a new ordinance governing the placement of items in the public rights-of-way. Titled "Encroachments on or in the Public Right-of-Way," Ordinance O-2-09 maintained the previous ordinance's prohibition on encroachments in the public rights-of-way, but carved out eight exceptions which allow: sandwich boards abutting a licensed business, planters, tables or chairs listed in a valid permit, set-outs of merchandise abutting a business establishment, property placed in the right-of-way by a governmental or quasi-governmental agency or body, temporary signs promoting festivals or special events, temporary scaffolding, and encroachments otherwise allowed by the City of Covington Code of Ordinances. Covington, Ky., Code § 96.01 (2009). In addition, the new encroachment ordinance eliminated the licensing scheme contained in O-48-05, and added new restrictions on the size, appearance, and placement of newsracks.

In light of the repeal of Ordinance O-48-05, the City moved to dismiss Bench Billboard's Second Amended Complaint in its entirety. The Court granted the City's motion with respect to Bench Billboard's claims for injunctive relief, and denied without prejudice the remainder of the motion. The parties subsequently settled all claims relating to the constitutionality and enforcement of Ordinance O-48-05. (Doc. #125).

Prior to this partial settlement, the City wrote to Bench Billboard, advising it of the new ordinance, and requesting that Bench Billboard remove all of its advertising benches currently placed in the City's rights of way. Bench Billboard again refused, and threatened – in light of its belief that Ordinance O-02-09 was unconstitutional, and its assertion that its benches qualify as non-conforming, pre-

existing uses under Kentucky law – to file suit in federal court if the City removed Bench Billboard's advertising benches from the City's sidewalks, or otherwise attempted to enforce the new ordinance against Bench Billboard.

In response to Bench Billboard's threats, the City requested, and was granted, leave to amend its Answer to assert a counterclaim for a declaratory judgment that Ordinances O-2-09 ("Encroachments on or in the Public Right-of-Way") and O-37-08 ("Sign Regulations") are constitutional. Bench Billboard filed an Answer to the City's counterclaim denying its allegations, and asserting a reciprocal counterclaim against the City. As with its prior challenge to Ordinance O-48-05, Bench Billboard alleges that the new ordinance violates the First and Fourteenth Amendments to the United States Constitution, and seeks compensatory and punitive damages, declaratory relief, and attorney's fees and costs. The action has now culminated in cross-motions for summary judgment, which are ripe for adjudication.

*Bench Billboard Co. v. City of Covington, Ky.*, No. 06-75-DLB, 2010 WL 420064 (E.D. Ky., Feb. 1, 2010) (some internal citations to the record omitted, emphasis added).

### A.    BBC's 1st Amendment Claims against Covington

BBC argues that Covington, Ky. Ordinance § O-2-09 (hereafter O-2-09) unconstitutionally burdens or restricts its exercise of its First Amendment right to place its advertising benches in Covington's rights-of-way. BBC's challenge is to the constitutionality of the Ordinance as applied. *Id.* at *8 n.9.

As to O-2-09's regulation of *commercial* speech, BBC argues that the district court should have applied *Central Hudson*'s[1] form of intermediate scrutiny, and that Covington failed to establish *Central Hudson*'s requirements: 1) that Covington had a substantial governmental interest in regulating bench billboards, 2) that O-2-09 directly advanced Covington's governmental interest, and 3) that O-2-09 is no more extensive than necessary to serve Covington's alleged governmental interests.

---

[1] *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980).

Regarding O-2-09's regulation of BBC's *non-commercial* speech, BBC asserts that the district court should have applied strict scrutiny. BBC argues that Covington cannot show that its interest in regulating BBC's *non-commercial* speech are compelling and that O-2-09 is narrowly tailored to serve that interest.

**1**. Pertinent Covington Regulations and Ordinances

Covington's 1984 Zoning Code made unlawful the placement of signs/messages of any kind on courtesy benches. Covington, Ky., Zoning Code O-65-84, § 158.151(J), now § 10.04.04[2] of O-37-08, remains in effect and provides:

> ARTICLE 10   SIGN REGULATIONS
>
> 10.04.04  COMPLIANCE REQUIRED:  It shall be unlawful and a violation of this Article for any person to fasten, place, paint, or attach in any way:  any sign, handbill, poster, advertisement, or notice of any kind, or cause the same to be done in or upon any curb-stone, lamp post, utility pole, hydrant, bridge, culvert, public drinking fountain, public trash container, courtesy benches, rest room, bus stop kiosk or shed, station building, tree, or in or upon any portion of any public sidewalk, street, or sign, except as specifically allowed within this Article.

R. 97-3/Covington, Ky., Zoning Code O-37-08, § 10.04.04.

**Ordinance O-2-09**

BBC challenges as violative of its First Amendment rights O-2-09, which provides:

> WHEREAS, City . . . has determined that prohibiting encroachments in the public right-of-way is necessary to ensure the health, safety and general welfare of the City of Covington and its citizens; and
>
> WHEREAS, the Board of Commissioners has determined that prohibiting encroachments in the public right-of-way assists in ensuring aesthetically pleasing City sidewalks, streets, neighborhoods, and business districts; and

---

[2]Section 10.04.04, formerly § 158.151(J) of Covington's 1984 Zoning Code (O-65-84) remained intact after Covington enacted its new sign ordinance on September 9, 2008 (Zoning Code O-37-08) and its new right-of-way encroachment ordinance on January 20, 2009 (O-2-09)).

WHEREAS, the Board of Commissioners acknowledge[s] that newsracks cannot be expressly prohibited and must receive special regulation, in part due to protections unique to them under the Constitution and their role in disseminating information to the general public; and

WHEREAS, it necessary [*sic*] and prudent to regulate items in or on the public right of way to ensure the safety of pedestrians and operators of vehicles traversing City streets, sidewalks and right of ways [*sic*]; and

WHEREAS, per its police powers and other statutory authority, the City of Covington has the exclusive right to regulate its public right-of ways [*sic*].

NOW, THEREFORE, BE IT ORDAINED . . . :

. . . .                                  Section 2
That a new § 96.01 "Encroachments on or in the Public Right-of-Way" is hereby created:

§ 96.01  ENCROACHMENTS ON THE PUBLIC RIGHT-OF-WAY
(A) *Definitions.*  For the purpose of this chapter the following definitions shall apply unless the context clearly indicates or requires a different meaning.

*BENCH.*  A seat or seats located on public sidewalks, along any public way or right-of-way, for the accommodation of persons awaiting transportation or for other purposes. *This definition includes benches that may or may not have advertising located anywhere on their exterior.*
. . . .
(B) *Encroachments on or in the Public Right-of-Way Prohibited.*

(1)  No encroachment shall be allowed *on or in a public right-of-way including public sidewalks or streets*, unless otherwise provided herein or elsewhere in the Covington Code of Ordinances. *Prohibited items include*, but are not limited to, items such as:  shelters, *benches* and vending machines.

. . . . (3) Exceptions.  The following exceptions shall be allowed, subject to the condition that the item(s) placed on or in a right-of-way do not create safety hazards by blocking reasonable access to or passage through a right-of-way, or egress and ingress to an adjoining entranceway, or by obstructing vehicular traffic sight lines:

a. Sandwich board advertising abutting a licensed business, as permitted by the City of Covington Zoning Ordinance.
b. Planters or landscaping items.
c. Any table and/or chairs listed in a valid permit issued pursuant to § 96.70.

10

d. Set-outs of merchandise or other related items in the right-of-way of the abutting business establishment during that business' regular operating hours, as set forth in Section C of this ordinance, unless otherwise prohibited in the City of Covington Zoning Ordinance.

e. *Any property placed in the right-of-way by a governmental or quasi-governmental agency or body*, including but not limited to traffic control and directional signs and devices, fire hydrants, emergency call boxes, United States Postal Service mail receptacles or boxes, telephones, electrical and light poles, *public transportation shelters, benches and identifying signs as required or permitted by law*, and street identification signs.

f. Temporary signage that promote[s] festivals, concerts or other special events that are open to the public, subject to the condition that the event has been issued a valid Special Events Permit by the Office of the City Manager. . . .
. . . .

h. Any encroachment otherwise allowed in the City of Covington Code of Ordinances.

(C) *Merchandise Display*. The display of merchandise is permitted on sidewalks, only subject to the following restrictions:
. . . .

(D) *Newsracks*. Newsracks may be placed in public right-of-ways [*sic*], subject to the following conditions and/or restrictions:

(1) It shall be unlawful for any owner to place, affix, erect, construct or maintain a newsrack upon any public sidewalk or public right-of-way without first having obtained written permission for the placement and location from the Office of the City Manager or its designee, in accordance with the provisions of this subchapter.

. . . . (2) Newsracks shall have the following dimensions:

d. The height shall not exceed 60 inches;
e. The width . . . shall not exceed 25 inches;
f. The depth . . . shall not exceed 25 inches.

(3) Newsracks may not be bolted or permanently affixed to any public sidewalk or improved right-of-way unless such installation is approved by the Office of the City Manager or its designee . . . .
. . . .

(9) Newsracks shall be placed in locations that do not obstruct or interfere with ingress to or egress from abutting properties and which do not impede or endanger pedestrians or vehicular traffic.

(10) Newsracks shall not be placed:

a. Upon a public sidewalk or public right-of-way in a manner that blocks ingress or egress to a building or readily identifiable or

11

marked bus stop loading zone, or other loading zone, or handicapped parking space; or

. . . .              e.  At any location whereby the clear space on the public sidewalk for passageway of pedestrians is reduced to less than 4 feet; or

              f.  In such a manner as to obstruct the sight lines at street intersections that creates safety hazards for pedestrians and vehicle operators . . .

. . . .                              Section 5

If any section, subsection, sentence, or clause of this ordinance is held invalid or unconstitutional by a court of competent jurisdiction, such portion shall be deemed a separate, distinct, and independent provision and such holding shall not affect the validity of the remaining portions of this ordinance.

R. 131-2/Covington, Ky., Ordinance § O-2-09 (some emphasis added).

**B.**

We first address BBC's argument that the district court should have applied *Central Hudson*'s form of intermediate scrutiny to Ordinance O-2-09's regulation of BBC's *commercial* speech.[3]  The district court declined to apply *Central Hudson*, concluding that "because Ordinance O-2-09 regulates the placement of items – such as benches – on which commercial or non-commercial signs may be posted – rather than advertising signs alone, the Court finds that it is appropriately analyzed as a content-neutral time, place, and manner restriction on speech." *Bench Billboard Co.*, 2010 WL 420064 at *6 n.7 (citing *Prime Media, Inc.*, 398 F.3d at 824).

This court noted in *Prime Media*:

Billboards and other visual signs, it is clear, represent a medium of expression that the Free Speech Clause has long protected.  But, in contrast to oral speech, they "pose distinctive problems" that also have long been subjected to the "police powers"

---

[3]BBC does not challenge the district court's determination that O-2-09 is content-neutral. *See Bench Billboard Co.*, 2010 WL 420064 at *5-6.  "Unlike content-based regulations that are subject to the 'most exacting scrutiny,' regulations 'unrelated to the content of speech are subject to an intermediate level of scrutiny." *Richland Bookmart, Inc. v. Knox Cnty., Tenn.*, 555 F.3d 512, 521 (6th Cir. 2009) (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994)).

12

of States and cities because billboards and signs "take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *City of Ladue v. Gilleo*, 512 U.S. 43, 48 [] (1994). It thus is "common ground that governments may regulate the physical characteristics" of signs and billboards in much the same way that "they can within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise." *Id.* (citing *Ward v. Rock Against Racism*, 491 U.S. 781 [] (1989); *Kovacs v. Cooper*, 336 U.S. 77 [] (1949).

Just as the First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner," *Wheeler v. Comm'r of Highways, Commonwealth of Kentucky*, 822 F.2d 586, 589 (6th Cir. 1987), . . . it does not permit municipalities to regulate methods of expression however, whenever and wherever they wish. Because the regulation of a medium of expression "inevitably affects communication itself," *Gilleo*, 512 U.S. at 48 [], the Court has subjected time, place and manner restrictions on speech to the following test: They "are valid provided [1] that they are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored [3] to serve a significant governmental interest, and [4] that they leave open ample alternative channels for communication of the information." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 [] (1984) . . . .

*Prime Media, Inc.*, 398 F.3d at 818.

The district court applied the form of intermediate scrutiny applicable to time, place, and manner restrictions on speech, which, as a practical matter, is substantially similar to *Central Hudson*'s form of intermediate scrutiny. As the Supreme Court observed in *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 554 (2001):

In recognition of the "distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech," *Central Hudson, supra*, at 562, [] (internal quotation marks omitted), we developed a framework for analyzing regulations of commercial speech that is "substantially similar" to the test for time, place, and manner restrictions, *Board of Trustees of State Univ. of N.Y. v. Fox*, [492 U.S. 469,] 477 [1989] . . . .

*See also Prime Media, Inc.*, 398 F.3d at 824 (analyzing ordinance restricting commercial-billboard size as a content-neutral time, place, and manner restriction on speech, and noting that

13

the"framework for analyzing regulations of commercial speech is 'substantially similar' to the test for time, place, and manner restrictions." (brackets omitted.))

Further, *Central Hudson*'s form of intermediate scrutiny advocated by BBC is no more demanding than the time, place, and manner intermediate scrutiny applied by the district court. In applying the *Central Hudson* test to provisions of a federal statute prohibiting the broadcast of certain lottery advertisements, the Supreme Court made clear that the validity of governmental restrictions on commercial speech should not be judged by standards more stringent than those applied to expressive conduct entitled to full First Amendment protection or to relevant time, place, or manner restrictions. *Board of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 477-78 (1989); *see also United States v. Edge Broad. Co.*, 509 U.S. 418, 429 (1993) (discussing *Fox*). Thus we fail to perceive any harm to BBC arising from the district court's application of time, place, and manner intermediate scrutiny rather than *Central Hudson* intermediate scrutiny.

In any event, the district court's application of the time, place, and manner scrutiny is supported by *Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382, 386 (6th Cir. 1996), in which this court determined that *Central Hudson*'s form of intermediate scrutiny is not appropriately applied to content-neutral ordinances that regulate both commercial and non-commercial speech.

## C.

We further agree with the district court that O-2-09 is narrowly-tailored to serve Covington's legitimate and significant content-neutral interests, and leaves open ample channels of communication, *see Prime Media, Inc.*, 398 F.3d at 819; *Cleveland Area Bd. of Realtors*, 88 F.3d at 388. The district court held:

> The record demonstrates that the City's interests in aesthetics and safety is not merely speculative; rather, it contains evidence – such as the testimony of City

14

Manager John Jay Fossett[4] – which indicates that citizen complaints provided the impetus for the enactment of the encroachment ordinances. *See* Covington, Ky., Code § 96.71 (2005) (repealed) ("[T]he Board of Commissioners of the City of Covington has received numerous complaints from citizens regarding the encroachment of the public right-of ways [*sic*] by benches, planters, vending machines and other items that hinder pedestrians' ability to use city sidewalks and public ways . . . .").

Bench Billboard does not dispute that a municipality's interest in aesthetics and safety may constitute significant government interests which justify a content-neutral restriction on speech. Rather, Bench Billboard contends that Ordinance O-2-09 is underinclusive, and that its exceptions call into question whether the City actually has an interest in improving safety and aesthetics. The Supreme Court has recognized that an ordinance's exceptions may "diminish the credibility of the government's rationale for restricting speech in the first place." *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994). Specifically Bench Billboard contends that the ordinance's exceptions regarding newsracks, and bus shelters and benches placed by governmental or quasi-governmental organizations render the ordinance's prohibition on other encroachments – such as benches – meaningless and ineffective.

This argument is unpersuasive for two reasons. First, Ordinance O-2-09 cannot be deemed underinclusive because if fails to regulate items placed in the rights-of-way by quasi-governmental organizations such as TANK, because the City is arguably without power to regulate the activities of such organizations. *See, e.g.,* Ky. Rev. Stat. § 100.324(1) (stating that public utilities "shall not be required to receive approval from the [municipality] for the location or relocation of any of their service facilities." Therefore, rather than representing a choice by the City to affirmatively allow TANK, and other similar entities, to place items in Covington's rights-of-way, exception (e) merely reflects limits of the City's power to regulate such entities. *See* Covington, Ky., Code § 96.01(B)(3)(e) (exempting from regulation "public transportation shelters, benches and identifying signs *as required or permitted by law"* (emphasis added)).

Second, the City's decision to allow newsracks to remain in its rights-of-way does not call into question the City's stated interest in clear and aesthetically-pleasing sidewalks; rather this exception merely demonstrates that the City has concluded that its interest in allowing certain messages – such as the transmittal of current news – to be freely conveyed to its citizens outweighed the[] City's aesthetic interest in

---

[4]In a footnote here, the district quoted from Fossett's deposition testimony: "Residents were complaining that the benches were ugly, and that they were reducing their property values when they were placed in front of their residence. And they felt they were on city property and that this should be regulated for [*sic*] prohibited."

eliminating all encroachments from its sidewalks. *See City of Ladue*, 512 U.S. at 53 ("[T]he exemptions from Ladue's ordinance demonstrate that Ladue has concluded that the interest in allowing certain messages to be conveyed by means of residential signs outweighs the City's aesthetic interest in eliminating outdoor signs.") Furthermore, the City is allowed to make a subjective determination that the newsracks – although by no means beautiful – are more aesthetically pleasing than advertising benches: "A city may fairly prefer smaller objects of visual blight over larger ones." *Prime Media*, 398 F.3d at 822 ("And it does not undermine the City's rationale for the regulation because the banned billboards and the permitted billboards are not 'equally unattractive.'" (quoting *Taxpayers for Vincent*, 466 U.S. at 811)). Simply stated, the exceptions to Ordinance O-2-09 do not undermine the stated purpose of the regulation.

For these reasons, the Court finds that the encroachment ordinance advances the significant government interests of sidewalk and traffic safety and aesthetics.

c. Ordinance O-2-09 is Narrowly-Tailored and Leaves Open Ample Channels of Communication

"Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not advance its goals." *Prime Media, Inc.*, 398 F.3d at 819[]. Therefore, to survive First Amendment review, an ordinance must be "narrowly tailored to serve a significant governmental interest," and must "leave open ample alternatives for communication of the information." *Ward*, 491 U.S. at 791. An ordinance is "narrowly tailored" if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799.

However, the requirement that an ordinance be "narrowly tailored" does not require that the ordinance be "the least restrictive or least intrusive means" of accomplishing the government's goal. *Ward*, 491 U.S. at 798. "Rather, the requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Accordingly, "[a] complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby*, 487 U.S. at 425.

Because the City's ban on encroachments, such as benches, is directly related to the purpose of Ordinance O-2-09 – eliminating items from the City's sidewalks – it satisfies the tailoring prong of time-place-and-manner scrutiny. Here, as in *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984), in which the Supreme Court upheld a complete ban on posting signs on telephone poles, the "substantive evil" targeted by the subject regulation – visual blight there, unsightly items on the

16

public sidewalks here – "is not merely a possible-by-product of the activity, but is created by the medium of expression itself . . . . [T]he application of the ordinance in this case responds precisely to the substantive problem which legitimately concerns the City. The ordinance curtails no more speech than necessary to accomplish its purpose." *Taxpayers for Vincent*, 466 U.S. at 810.

The "fit" between the City's means and ends is a reasonable one. By banning advertising benches from Covington's sidewalks, "the City did no more than eliminate the exact source of the evil it sought to remedy." *Id.* at 808; *see Metromedia*, 453 U.S. at 508 (plurality) ("If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them.").

In addition, because Ordinance O-2-09 arguably only bans one type of sign within the City of Covington, it leaves open ample alternatives for the communication of the information displayed on Bench Billboard's advertising benches. The ordinance does not "affect any individual's freedom to exercise the right to speak and distribute literature in the same place where [advertising benches] are prohibited," *Taxpayers for Vincent*, 466 U.S. at 812, and Bench Billboard's customer's [*sic*] remain free to advertise their businesses or causes on the internet, radio, or in printed periodicals. In addition, to the extent that its signs are not prohibited by Covington's zoning code, Bench Billboard remains free to negotiate with private property owners to secure new property on which to place its benches.

In conclusion, the Court finds Ordinance O-2-09 to be a reasonable restriction on the time, place, and manner of speech that leaves open ample channels of communication and declares that Ordinance O-2-09 is constitutional in that it does not, as applied to Bench Billboard, violate the First Amendment to the United States Constitution.

*Bench Billboard Co.*, 2010 WL 420064 at *6-8. BBC's remaining arguments are without merit.[5]

---

[5]BBC's argument that O-2-09 prohibits only BBC advertising benches is patently disingenuous; the record is clear that Covington removed benches placed by a number of private bench billboard companies on its rights-of-way. BBC's assertion that advertising benches and bus shelters are still permitted under O-2-09 is inaccurate; as discussed *supra*, Covington does not, through its Ordinance or otherwise, authorize transit authorities/quasi-governmental bodies such as TANK to locate bus shelters and/or benches, rather, Kentucky statutes provide that transit authorities possess the status of a political subdivision of the State, and authorize them to install and relocate facilities without approval of local planning units such as the City of Covington. *See* Ky. Rev. Stat. Ann. §§ 96A.020, 100.324, 100.361(2).

### III.  Equal Protection

BBC asserts that the district court erred in holding that O-2-09 does not violate its Equal Protection rights under the Fourteenth Amendment.  We disagree.

The Equal Protection Clause requires that government laws treat similarly situated persons equally and not classify arbitrarily.  *See* U.S. Const. Amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002).  If a challenged law neither interferes with fundamental rights nor targets a suspect class, then that law will survive an equal-protection challenge so long as it bears "a rational relationship to a legitimate state interest." *Richland Bookmark*, 278 F.3d at 574.  We review O-2-09 under the rational-basis standard because both parties agree that this is the proper standard. Under this standard, the rational basis supporting a law "need not be stated in the statute or in its legislative history; it is sufficient that a court can conceive of a reasonable justification for the statutory distinction." *United States v. Dunham*, 295 F.3d 605, 611 (6th Cir. 2002) (internal citations omitted).

The gist of BBC's equal-protection claim is that O-2-09 is unconstitutional because it is underinclusive. O-2-09 exempts newsracks, sandwich boards, and bus shelters and benches of quasi-governmental agencies like public utilities (e.g., TANK) from the ban on encroachments on the public rights-of-way.  BBC argues that this is irrational because these items impact the safety and beauty of public rights-of-way just as much as privately owned benches like BBC's, which the ordinance bans.  "The problem with this argument [i.e., that an act is unconstitutional because it is underinclusive], however, is that an exemption will rarely, if ever, invalidate a statute, unless the

18

distinction created by the exemption is the result of invidious discrimination." *Richland Bookmart*,

278 F.3d at 576. As explained by the Supreme Court,

> [t]he problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.

*Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 489 (1955) (internal citations omitted). BBC

offers no evidence that Covington acted with invidious intent in distinguishing between privately

owned benches and newsracks, sandwich boards, and bus shelters and benches of quasi-

governmental agencies.

Rational reasons support the distinction. Covington is arguably without authority to prohibit

bus shelters and benches placed by public utilities such as TANK. *See, e.g.,* Ky. Rev. Stat. §

100.324(1). Sandwich boards are much smaller than BBC's benches, are temporary as opposed to

permanent, and are permissibly located on public rights-of-way only if they abut a licensed business.

Newsracks are also smaller than the benches, which weigh 475 pounds and are approximately 6 feet

long, 2 feet deep, and 3.5 feet tall. Covington was therefore entitled to conclude that these benches

affected the aesthetics and safety of public rights-of-way – interests that are undisputedly legitimate

– differently than the sandwich boards and newsracks that Covington could also effectively regulate.

The ordinance therefore does not violate BBC's right to equal protection of the laws.

**IV.**

BBC purports to challenge the district court's dismissal of all claims relating to the

constitutionality of Covington Zoning Code § O-37-08. However the basis of this challenge is

19

unclear. Covington filed a counterclaim seeking a declaratory judgment that Ordinance O-2-09 ("Encroachments on or in the Public Right-of-Way") and Zoning Ordinance O-37-08 ("Sign Regulations") are constitutional. Covington argued that O-37-08 and O-2-09 supported its prohibition of advertising benches on its rights-of-way. BBC then asserted a reciprocal counterclaim against Covington, alleging that O-37-08 violated its First and Fourteenth Amendments rights, and sought declaratory relief. Covington sought summary judgment on its counterclaim and BBC argued in response that O-37-08 applied only to signage on private property or signage on Covington-owned structures, and did not apply to BBC benches, but that to the extent that O-37-08 and O-2-09 prohibited its benches while permitting, inter alia, governmental or quasi-governmental entities from placing advertising benches and bus shelters, it unconstitutionally infringed on BBC's First Amendment and Equal Protection rights.

The district court dismissed the claims relating to O-37-08 for lack of subject-matter jurisdiction after it determined that Covington took no action regarding BBC as a result of O-37-08. Thus, BBC's proffered interpretation of the ordinance as not applying to its benches did not establish a substantial controversy regarding its constitutionality. Similarly, if Covington did not rely on O-37-08 in prohibiting BBC's benches, the parties have no true controversy regarding its constitutionality. In any event, BBC links its challenge to O-37-08 to its challenge to O-2-09, which we have already rejected.

**V.**

BBC's final argument is that the district court erred in failing to recognize BBC's bench billboards as non-conforming uses under Covington and Kentucky law. We disagree.

The district court concluded:

20

[] Bench Billboard contends that, pursuant to Kentucky Revised Statu[t]es Section 100.253, its benches are entitled to non-conforming use status and should be permitted to remain on the City's sidewalks despite the encroachment ordinance's prohibition on benches. Section 100.253(1) states that "[t]he lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it, may be continued, although such use does not conform to the provisions of such regulations . . . ." K.R.S. § 100.253.

Section 100.253, however, has no application to the instant case because Ordinance O-2-09 is not a zoning ordinance. By its very terms, that section only applies to uses which become illegal due to the adoption of a *zoning* ordinance. The Kentucky Court of Appeals has recognized that not all ordinances adopted by a municipality affecting the use of land or commercial signage qualify as zoning ordinances. *See, e.g., LM Entertainment, Inc. v. City of Mt. Sterling*, No. 2008-CA-000469 MR, 2009 WL 197549, at *3 (Ky. Ct. App. July 10, 2009) (holding that a city ordinance requiring a separate license for sexually-oriented businesses was "not a zoning ordinance and K.R.S. 100.253 does not apply"); *Mr. B's Bar & Lounge, Inc. v. City of Louisville*, 630 S.W.2d 564, 567 (Ky. Ct. App. 1981) (holding that a city ordinance regulating the appearance of signs belonging to sexually-oriented businesses was "not a zoning ordinance").

The conclusion that the encroachment ordinance is not a "zoning" ordinance is supported by the codified location of Ordinance O-2-09 within the City of Covington Code of Ordinances. The encroachment ordinance is not part of Covington's zoning code: Ordinance O-2-09 is part of Title IX "General Regulations" while the City's zoning code is located in Title XV "Land Usage." In addition, the procedure utilized by Covington's Board of Commissioners to enact the encroachment ordinance – a simple vote – indicates that the Board did not consider or intend Ordinance O-2-09 to operate as an amendment to the City's zoning code. *Cf.* Ky. Rev. Stat. § 100.211 (requiring the publication of notice, a public hearing, and a recommendation by the county planning commission before amendments may be made to the text of a zoning regulation).

Because Ordinance O-2-09 is not a zoning ordinance, its enactment does not entitle Bench Billboard's advertising benches to non-conforming use status. Consequently, the City's encroachment ordinance prohibits Bench Billboard from placing its benches in the City's rights-of-way, regardless of how many years the benches have been located within Covington.

*Bench Billboard*, 2010 WL 420064 at *10.

21

**A.**

In Kentucky, "[n]onconforming use is authorized by KRS [§] 100.253, an enabling act."

*Dempsey v. Newport Bd. of Adjustments*, 941 S.W.2d 483, 484 (Ky. App. 1997). Kentucky Revised

Statute § 100.253 provides in pertinent part:

> (1) The lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it, may be continued, although such use does not conform to the provisions of such regulations, except as otherwise provided herein.
> . . . .
> (3) Any use which has existed illegally and does not conform to the provisions of the zoning regulations, and has been in continuous existence for a period of ten (10) years, and which has not been the subject of any adverse order or other adverse action by the administrative official during said period, shall be deemed a nonconforming use. Thereafter, such use shall be governed by the provisions of subsection (2) of this section.

Kentucky Revised Statute § 100.111 sets forth definitions of "nonconforming use or structure" and

"structure":

> (13) "Nonconforming use or structure" means an activity or a building, sign, structure, or a portion thereon which lawfully existed before the adoption of the zoning regulation, but which does not conform to all of the regulations contained in the zoning regulation which pertain to the zone in which it is located;
> . . . .
> (21) "Structure" means anything constructed or made, the use of which requires permanent location in or on the ground or attachment to something having a permanent location in or on the ground, including buildings and signs . . . .

Covington's Zoning Code addresses nonconforming uses in § 14.05:

> 14.05.01 **Description**
> A nonconforming use is a land use that was lawfully established in accordance with zoning regulations in effect at the time of its establishment but that is no longer allowed by the use regulations of the zone in which it is now located.
> . . . .
> 14.05.05 **Nonconforming Use Status Deemed**
> Pursuant to KRS [§] 100.253(3), any use that has existed illegally and does not conform to the provisions of the city's zoning regulations, has been in continuous existence for a period of 10 years, and has not been the subject of any adverse order

or other adverse action by the administrative official during this period is deemed a nonconforming use. Thereafter, the use will be governed by the provisions of this article.

R. 131-8/Covington Zoning Code Art. 14.

## B.

BBC asserts that the district court improperly determined that Ky. Rev. Stat. Ann. § 100.253 "has no application to the instant case because Ordinance O-2-09 is not a zoning ordinance. By its very terms, that section only applies to uses which become illegal due to the adoption of a *zoning* ordinance." *Bench Billboard*, 2010 WL 420064 at *10.

BBC asserts that its advertising benches have been on Covington rights-of-way since 1955 and that, until 2005, Covington Zoning Code § 158.057 specifically permitted its advertising benches to be installed thereon. BBC is incorrect. Although §158.057(B)(7) and (8) permitted "bus stop benches" on Covington's public rights-of-way from 1984 until June 7, 2005, § 158.151(J) prohibited advertising and signs on benches.

BBC also argues that because its advertising benches had been in continuous existence for ten years, they became non-conforming uses in 2005 under Covington Zoning Code § 14.05.05 and Ky. Rev. Stat. Ann. § 100.253(3), quoted *supra*. But BBC ignores that its status in relation to Covington before Ordinance O-2-09 took effect in 2009 was as a licensee that sought permission to place its advertising benches, paid a fee, and removed them at Covington's direction – Ordinance O-48-05 and predecessors prohibited the placement of any bench in a public right-of-way without having obtained a permit and Covington submitted below in support of its motion for summary judgment copies of licenses it had granted BBC going as far back as 1964.

23

We agree with Covington that a mere licensee cannot assert rights acquired by a prior land use without some form of ownership of the land. "The right to continue a nonconforming property use is a vested property right. . . . [it] is not a personal right but one that runs with the land." 101A C.J.S, Zoning & Land Planning § 160.

BBC's argument that its advertising benches constituted non-conforming uses thus fails.

## VI.

We **AFFIRM** the district court's grant of summary judgment to TANK on the basis that BBC lacked standing. As to Defendant City of Covington, we **AFFIRM** the district court's dismissal of BBC's First Amendment and Equal Protection claims against Covington and the court's declaration that O-2-09 is constitutional, in that it does not, as applied to BBC, violate either the First or Fourteenth Amendments.