NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0940n.06

No. 12-5915

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Nov 01, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BENCH BILLBOARD COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF COVINGTON, KENTUCKY, | ) | COURT FOR THE EASTERN |
| TRANSIT AUTHORITY OF NORTHERN | ) | DISTRICT OF KENTUCKY |
| KENTUCKY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | OPINION |

Before: ROGERS and DONALD, Circuit Judges; ANDERSON, District Judge.[*]

**S. THOMAS ANDERSON, District Judge.** Bench Billboard Company (BBC) appeals the

district court's order granting further injunctive relief to the City of Covington, Kentucky

(Covington). The district court previously granted summary judgment in favor of Covington on

BBC's First Amendment and Equal Protection challenge to a city ordinance, and we affirmed.

*Bench Billboard Co. v. City of Covington, Ky. ("Bench Billboard I")*, 465 F. App'x 395 (6th Cir.

2012). Following *Bench Billboard I*, BBC still refused to remove its bus stop benches from public

rights-of-way in violation of the city ordinance. The district court granted Covington's post-

---

[*]The Honorable S. Thomas Anderson, United States District Judge for the Western District
of Tennessee, sitting by designation.

1

judgment request for injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202. BBC now appeals the district court's order. Because the district court did not abuse its discretion in granting Covington injunctive relief, we **AFFIRM** the order of the district court.

## I.

As the court stated in its previous opinion in this case, BBC "installs advertising benches on both public and private property in Kentucky, usually near bus stops." *Bench Billboard I*, 465 F. App'x at 396. Covington Ordinance O–2–09 prohibits any encroachment on public rights-of-way such as public sidewalks or streets. *Id.* at 402. Among such encroachments are "benches," which the ordinance defines as "[a] seat or seats located on public sidewalks, along any public way or right-of-way, for the accommodation of persons awaiting transportation or for other purposes" and "that may or may not have advertising located anywhere on their exterior." *Id.* (quoting Covington, Ky. Ordinance O–2–09) (emphasis removed). The ordinance creates exceptions for "[a]ny property placed in the right-of-way by a governmental or quasi-governmental agency or body, including but not limited to . . . public transportation shelters [and] benches." *Id.* (emphasis removed). After Covington began enforcing its ordinances and removing BBC's benches from public rights-of-way, BBC filed suit, asserting constitutional challenges to the ordinances and later adding claims against the Transit Authority of Northern Kentucky (TANK). *Id.* at 396. The district court granted summary judgment in favor of Covington and TANK, holding that O–2–09 did not violate BBC's constitutional rights and that BBC lacked standing to bring its claims against TANK. In *Bench Billboard I*, we affirmed, and our mandate issued on March 8, 2012. R.143, Page I.D. # 2073.

On March 27, 2012, Covington filed a motion with the district court, requesting "a mandatory injunction, or alternatively a court order for specific relief under Fed. R. Civ. P. 70, that

would require [BBC] to remove its sidewalk benches, which remain located in Covington's rights-of-way in violation of Covington Ord. O–2–09." R. 144-1, Page I.D. # 2077. According to Covington, BBC refused to remove its benches from public rights-of-way, even though this Court had affirmed the constitutionality of O–2–09. *Id.* at 2078.[2]

The district court granted Covington's motion for further relief. *Bench Billboard Co. v. City of Covington, Ky.*, CIV.A. 06-75-DLB, 2012 WL 2919158 (E.D. Ky. July 17, 2012). The district court concluded that 28 U.S.C. § 2202 granted it the authority to issue an injunction or any other necessary or proper relief based on its previous declaratory judgment.[3] The district court held that, even though Covington had not requested injunctive relief in its pleadings, post-judgment injunctive relief was "a common sequel to a declaratory judgment," where "the adversary has thumbed his nose at the declaration." *Id.* at *4 (citation and internal quotation marks omitted). The injunctive relief was also necessary or proper based on the rights defined in the district court's declaration, "particularly in light of [BBC]'s continued refusal to comply with the ordinance." *Id.* at *5. The district court went on to reject BBC's argument that under Kentucky law it had the right to maintain benches at TANK bus stops. *Id.* at * 6–8. BBC's timely appeal followed.

## II.

We review the district court's order granting injunctive relief for an abuse of discretion. Abuse of discretion is the correct standard of review for injunctive relief generally. *U.S. S.E.C. v.*

---

[2]Covington sought no injunctive relief as to TANK. For its part TANK did not respond to Covington's motion, though counsel for TANK did attend the motion hearing. R. 154.

[3]The district court held that relief under Rule 70 of the Federal Rules of Civil Procedure was not available under the circumstances. *Bench Billboard Co.*, 2012 WL 2919158, at *2 n.5. Neither party addresses this ruling on appeal.

3

*Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 332 (6th Cir. 2013). Likewise, it is undisputed in this case that the district court's injunction was granted pursuant to the Declaratory Judgment Act, and abuse of discretion is the proper standard of review for relief granted under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995) ("We believe it more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the *declaratory judgment remedy*, and the fitness of the case for resolution, are peculiarly within their grasp.") (emphasis added)); *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012).

BBC argues that the Court should review the district court's order de novo because the First Amendment is implicated in this case.[4] We have applied de novo review only where a district court grants a preliminary injunction implicating First Amendment rights. *E.g. Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) ("[T]he standard of review for a district court decision regarding a preliminary injunction with First Amendment implications is de novo."). We have already addressed the First Amendment concerns presented by BBC and affirmed the district court's declaration that Covington's ordinance does not violate BBC's constitutional rights. Furthermore, the injunctive relief granted by the district court in this case was not preliminary in nature but in furtherance of the district court's declaratory judgment, a judgment which is now final. There is no reason then for us to conclude that we should review the district court's order granting injunctive relief de novo.

---

[4]BBC maintained at oral argument that First Amendment concerns might be presented if the Court remanded the case to the district court for further proceedings.

An abuse of discretion occurs if the district court "relied on erroneous findings of fact, applied the wrong legal standard, misapplied the correct legal standard when reaching a conclusion, or made a clear error of judgment." *Sierra Brokerage Servs.*, 712 F.3d at 332 (citing *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011) (internal brackets omitted)). Therefore, the court reviews the district court's factual findings for clear error, legal conclusions de novo, and the scope of injunctive relief for abuse of discretion. *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 249 (6th Cir. 2011) (citing *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir. 2005)).

A.

The only issue presented in this appeal is whether BBC should be enjoined to remove its benches found at TANK bus stops because the benches are located in Covington's public rights-of-way in violation of Ordinance O–2–09. BBC does not challenge the district court's authority to issue the injunction or raise any objections to the district court's findings of fact in support of its decision to grant injunctive relief.[5] BBC merely contests the district court's legal conclusions and the scope of the injunctive relief fashioned by the district court. Specifically, BBC contends that the district court abused its discretion by ordering BBC to remove all of its benches in Covington's public rights-of-way at TANK bus stops. We disagree and hold that the district court's order granting further injunctive relief was not an abuse of discretion.

---

[5]The district court appears to have engaged in very little fact-finding in granting Covington's motion for further relief. The district court noted that the "factual and procedural history of this matter is articulated in more detail in this Court's previous opinions." *Bench Billboard Co.*, 2012 WL 2919158, at *1. The only new factual developments in the case, i.e. BBC's refusal to remove its benches pursuant to O–2–09, occurred after this court issued its opinion and mandate in *Bench Billboard I*. The district court briefly described the posture of the case post-mandate and then proceeded to its legal analysis. *Id.* at *2.

5

As an initial matter, BBC has not challenged the district court's conclusion that nothing in the declaratory judgment or in our opinion in *Bench Billboard I* limited the holding only to certain benches found at certain locations. The district court explained that "[i]n its prior decision upholding the constitutionality of Ordinance O–2–09, the Court considered all Bench Billboard benches located in Covington's pubic rights-of-way as subject to Ordinance O–2–09." *Bench Billboard Co.*, 2012 WL 2919158, at *5 (citation omitted). Likewise, in *Bench Billboard I* we framed BBC's alleged injury as "Covington's removal of [its] benches from public rights-of-way including in the area of TANK bus stops pursuant to a Covington ordinance." *Bench Billboard I*, 465 F. App'x at 398. It cannot be said then that the prior decisions in this case never addressed whether O–2–09 applied to BBC's benches at TANK bus stops.[6]

BBC argues that, while *Bench Billboard I* held Covington's ordinance to be constitutional, this Court never specifically concluded that BBC could not place its benches at TANK bus stops. BBC contends that under Ky. Rev. Stat. Ann. § 100.324(1), ordinances like O–2–09 do not reach TANK service facilities or any other encroachment placed by TANK at its service facilities, such as bus shelters or benches, that happen to be located in Covington's public rights-of way. In other words, BBC asks us to construe broadly the exemption from local ordinances under Kentucky law so that the exemption runs to all property located at TANK's service facilities, whether the property is TANK's or the property of a private party like BBC. In a slight variation of the same argument,

---

[6]BBC has argued in this appeal that neither this Court nor the district court had previously reached the issue about BBC benches at TANK bus stops mainly because TANK was dismissed from the case for BBC's lack of standing. As more fully discussed below, this argument is without merit. While it is true that BBC lacked standing to pursue any claim against TANK, BBC had a full opportunity to engage in discovery as to TANK. In *Bench Billboard I*, this Court made several factual determinations about the relationship between BBC and TANK and how BBC benches came to be at TANK bus stops, all based on a fully developed evidentiary record. 465 F. App'x at 398.

BBC argues that TANK can "allow" third parties to locate property at TANK bus stops and thereby receive the benefit of TANK's exemption under § 100.324(1). BBC's Br. 17 ("[I]f TANK can allow the placement of advertising signs on the sides of transit shelters, . . . regardless as to local zoning ordinances [like O–2–09], it can certainly allow the placement of advertising benches at its bus stops . . . ."). Therefore, BBC argues that based on TANK's statutory exemption from local ordinances like O–2–09, BBC's benches at TANK bus stops should be exempt from the encroachment ordinance as well.

The district court correctly held that the statutory exemption did not shield BBC's benches from local ordinances like O–2–09. Ky. Rev. Stat. Ann. § 100.324(1) reads in relevant part that "[a]ll other provisions of this chapter to the contrary notwithstanding, public utilities operating under the jurisdiction of the Public Service Commission . . . shall not be required to receive the approval of the planning unit for the location or relocation of any of their service facilities." Ky. Rev. Stat. Ann. § 100.324(1). It is undisputed here that TANK is a "public utility" covered by this section. The district court assumed for purposes of its analysis that TANK was not required to receive the approval of the planning unit for the location or relocation of any of its service facilities. *Bench Billboard Co.*, 2012 WL 2919158, at \*6. The question then is whether BBC's benches located at TANK bus stops constitute TANK service facilities covered by the exemption in § 100.324(1), which would in turn exempt BBC's benches at TANK bus stops from Covington Ordinance O–2–09.

When considering a matter of statutory interpretation, this court begins with the statutory language itself. *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 741 (6th Cir. 2013) (citation omitted). Where the meaning of the statute's language is plain, the Court gives it effect, and the Court's analysis is at its end. *Id.* (citation omitted). Here the

7

meaning of Ky. Rev. Stat. Ann. § 100.324(1) is plain. Section § 100.324(1) exempts public utilities like TANK from receiving prior approval "for the location or relocation of any of *their* service facilities." Ky. Rev. Stat. Ann. § 100.324(1) (emphasis added). While the statute does not define "service facilities," the statute grants the exemption only to "public utilities" like TANK. The statute's use of the possessive pronoun "their" clearly limits the exempted service facilities to those possessed or owned by the utility itself and which the utility has located or relocated. The statute provides no support for BBC's theory that the exemption runs to any property such as BBC's benches, simply because the property is located or relocated by a third party at a utility's "service facility." As the district court aptly stated in its order on injunctive relief, "TANK, as a public utility, does not need approval from the City of Covington for the placement of *its* service facilities, including shelters, benches, and identifying signs," and yet BBC "appears to continually overlook" the fact that BBC's "benches are not the *property of a public utility*." *Bench Billboard Co.*, 2012 WL 2919158, at *8 n.9 (emphasis added). Strictly as a matter of statutory interpretation, § 100.324(1)'s exemption would only apply to TANK's own "service facilities," which TANK has located or relocated, and not to benches owned and placed by BBC at TANK's "service facilities." Therefore, BBC's argument fails under a plain reading of Ky. Rev. Stat. Ann. § 100.324(1).

Our construction of Ky. Rev. Stat. Ann. § 100.324(1) is consistent with the district court's analysis below. In granting Covington's motion for injunctive relief, the district court correctly found that BBC had adduced no evidence to show that TANK had ever taken any steps "to claim the benches as its own, or to assert any right to the benches or their placement." *Id.* at *6. BBC concedes as much on appeal where it admits that the exemption under Kentucky law "belongs to TANK not BBC." BBC's Br. 12. Nevertheless, BBC denies that TANK must own or adopt the

8

benches in order for the exemption to apply. So long as the benches are located on TANK's service facilities, the act of placing the benches "is really TANK's." *Id.* at 18–19. For the reasons already discussed, BBC's theory is not supported by the plain language of § 100.324(1), and BBC has failed to cite any legal support for its broader construction of § 100.324(1). Therefore, BBC's benches at TANK bus stops are not exempt from O–2–09.

In what appears to be an alternative argument, BBC argues that under § 100.324(1) TANK has the right "to utilize its service facility by allowing the placement of signs/structures, even though contrary to local zoning ordinances." BBC's Br. 12. BBC contends that TANK "is merely maximizing its use and enhancement of its bus stops" and "not conferring upon [any] third parties its statutory exemption." *Id.* at 18. For example, TANK "contracts with third parties allowing them to place ads on many of the TANK bus shelters located at the bus stops." *Id.* at 17. BBC asks rhetorically then whether there is "really any difference between TANK *allowing* third parties to place ads on its transit shelters and TANK *allowing* BBC to place advertising benches at its service facilities." *Id.* at 18 (emphasis added).

BBC's alternative argument is without merit. First, the answer to BBC's rhetorical question must obviously be yes. BBC has failed to show how the two circumstances, TANK's power to sell advertising space on its own bus shelters and the unauthorized placement of BBC's benches at or near TANK bus stops, are legally or factually similar. On the contrary, the record in this case proves the two situations to be entirely distinguishable. It is undisputed that TANK formerly contracted with third-party advertisers to sell space on its own bus shelters in Covington and generated revenue

9

from the ad sales.[7]  As this court stated in *Bench Billboard I*, after BBC filed suit in this matter, "TANK agreed to voluntarily cease placing paid advertisements on its bus shelters in Covington" in response to Covington's request that TANK remove the advertising. *Bench Billboard I*, 465 F. App'x at 399 (emphasis removed).  However, in its briefing in this appeal, BBC states that "TANK is knowingly allowing the placement of third-party ads at its bus stops," suggesting that TANK passively acquiesced in the unauthorized, independent acts of third parties to attach advertisements to TANK's own bus stops.  BBC's Opening Br. 18.  BBC has cited no evidence to support its characterization of TANK's activities.[8]

By contrast it is undisputed that TANK has no contractual relationship with BBC and receives no revenue from BBC for the placement of BBC's benches at TANK bus stops.  In *Bench Billboard I*, we noted the record evidence that BBC had placed its benches at TANK bus stops "without TANK's involvement or consent."  *Bench Billboard I*, 465 F. App'x at 398.  What is more, we previously found that "BBC presented no evidence that TANK had authority to permit private corporations to install bench billboards at TANK bus stops that would be exempted from local

---

[7]*See* R. 79, Malone Dep., Page I.D. # 878;  R. 80, Newsome Dep., Page I.D. # 918; R. 87-2, TANK's Interrog. Resp., Page I.D. # 1135, 1141.  The district court did not specifically rely on this evidence in announcing its decision to grant injunctive relief, though this Court in *Bench Billboard I* cited some of these same exhibits.  465 F. App'x at 398 (citing R. 87-2, TANK's Interrog. Resp.), 399 (citing R. 79, Malone Dep.).  Additionally, BBC itself cited some of the same record evidence at oral argument.

[8]BBC obliquely refers to the fact that some small percentage of TANK's bus shelters were not actually placed by TANK.  The record evidence shows that Northern Kentucky University owns some bus shelters at TANK bus stops and that some unidentified third party owns other shelters. R. 77, Berkley Dep. 20:14-21:10, Jan. 16, 2008, Page I.D. # 755.  To borrow the language of § 100.324(1), TANK arguably did not "locate or relocate" these specific shelters.  However, there is no evidence that any of these other shelters are actually located in the City of Covington so that Ordinance O–2–09 would apply.  BBC has not shown then why bus shelters other than those owned, "located," or "relocated" by TANK itself in Covington are relevant in this appeal.

ordinances . . . by virtue of TANK's status as a public utility" and that "the record evidence supports that TANK cannot authorize placement of *privately owned* benches at TANK bus stops." *Id.* (emphasis in original).[9] In short, BBC's argument that the placement of BBC benches at TANK bus stops is "really TANK's" activity is without evidentiary support in this case and is contradicted by our previous conclusions. BBC's Br. 19. Therefore, BBC has failed to show that TANK's sale of advertising space to private third parties is in any way analogous to BBC's placement of benches at TANK bus stops without TANK's consent.[10] For these reasons, the scope of the injunctive relief granted by the district court was not an abuse of discretion.

B.

Not only does BBC's theory find no support under Kentucky law, BBC's argument that TANK has "allowed" it to place BBC's benches at TANK bus stops is foreclosed by the law of the case doctrine. Both Covington and TANK argue that the premises underpinning BBC's theory were all previously considered and rejected in *Bench Billboard I*. According to Covington, the doctrines of issue preclusion and claim preclusion apply; TANK argues that the previous holdings are now

---

[9]As more fully discussed below, these conclusions of the *Billboard Bench I* panel belie BBC's contention that "the precise issue that has never been decided on the merits is whether TANK can place or allow to be placed structures such as: (1) transit shelters, with or without signage; and (2) benches, with or without signage, at its bus stops, even though it may be contrary to local zoning ordinances." BBC's Reply Br. 2.

[10]In its brief Covington mentions a recent decision of the Kentucky Court of Appeals construing § 100.324(4). *Com., Transp. Cabinet, Dep't of Highways v. Bd. of Educ. of Bellevue Indep. Sch. Dist.*, No. 2010-CA-001733-MR, 2012 WL 876722 (Ky. Ct. App. Mar. 16, 2012). Although Covington discusses the facts of the case and the holding of the Kentucky court, Covington has not shown why the decision applies to the issue presented in this appeal. The *Bellevue Independent Schools* case concerned a public school's right to erect a billboard on school property and then lease the advertising to a private third party. Notably the Kentucky Court of Appeals never construed paragraph (1) of Ky. Rev. Stat. Ann. § 100.324, apparently because that paragraph applies to public utilities, and not to public school districts.

11

the law of the case. Covington and TANK contend that BBC cannot attempt to relitigate these issues in an effort to avoid complying with the district court's injunction. BBC responds that "the precise issue that has never been decided on the merits is whether TANK can place or allow to be placed structures, such as: (1) transit shelters, with or without signage; and (2) benches, with or without signage, at its bus stops, even though it may be contrary to local zoning ordinances." BBC's Reply Br. 2. BBC argues that this issue is not res judicata because the issue was not actually litigated in a prior proceeding nor was its resolution necessary for the outcome of the proceeding. BBC requests for the first time in its reply brief that this court remand the case to the district court so that this issue "may be fully briefed, argued, and decided." *Id.* at 9.

"Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 400 (6th Cir. 2012), *cert. granted,* No. 12-873, 2013 WL 182751 (U.S. June 3, 2013) (quoting *Hanover Ins. Co. v. Am. Eng'g Co.,* 105 F.3d 306, 312 (6th Cir. 1997)).[11] "[F]indings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *United States v.*

[11]The law-of-the-case doctrine applies here because this is a successive appeal in the same case between the same parties. *E.g. Bach v. First Union Nat. Bank*, 486 F.3d 150, 153 (6th Cir. 2007) ("The conclusions in *Bach I* constitute the law of the case for this matter, and will govern our consideration of the issues in this second appeal."). In contrast, the doctrine of issue preclusion "often referred to as collateral estoppel, precludes relitigation of issues of fact or law actually litigated and decided *in a prior action* between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Georgia-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (emphasis added) (citations omitted). Likewise, "[u]nder the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as *the earlier suit.*" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation and internal quotation marks omitted); *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 681 F.3d 819, 824 (6th Cir. 2012).

12

*Hughes*, 505 F.3d 578, 591 (6th Cir. 2007) (quoting *Heathcoat v. Potts,* 905 F.2d 367, 370 (11th Cir. 1990)). The law of the case doctrine is "not an inexorable command," and courts must use "common sense" in applying it. *Hanover Ins. Co.*, 105 F.3d at 312 (quoting *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 767 (6th Cir. 1989) (internal quotation marks omitted)). Accordingly, the law of the case doctrine is discretionary "when applied to a coordinate court or the same court's own decisions." *Bowles v. Russell*, 432 F.3d 668, 677 (6th Cir. 2005) (internal punctuation and citation omitted). "Nevertheless, a court's power to reach a result inconsistent with a prior decision reached in the same case is to be exercised very sparingly, and only under extraordinary conditions." *In re Kenneth Allen Knight Tr.*, 303 F.3d 671, 677 (6th Cir. 2002) (citation and internal quotation marks omitted).

Our analysis of the record evidence in *Bench Billboard I* is now the law of the case, and BBC's premise that TANK has "allowed" it to place its benches at TANK bus stops is precluded under the law of the case doctrine. In both appeals BBC has argued the legal effect of Ky. Rev. Stat. Ann. § 100.324(1) on BBC's benches situated at TANK bus stops. In the first appeal, BBC argued that it had standing to assert claims against TANK, in part because TANK "is exempt from local zoning regulations under Kentucky law" and therefore "could have circumvented [Covington's ordinances] by adopting BBC's benches as TANK's own." *Bench Billboard I*, 465 F. App'x at 397. In a similar fashion, BBC argues in this appeal that its benches are exempt from O–2–09 because the act of placing BBC's benches at TANK bus stops "is really TANK's" because "TANK is knowingly allowing the placement of third-party ads at its bus stops and knowingly allowing the placement of advertising benches at its bus stops." BBC's Br. 19.

13

Even though each appeal has raised different questions of law (standing in the first and the proper scope of injunctive relief in the second), BBC is attempting to religitate here evidentiary issues that were necessarily decided at an earlier stage of the litigation. BBC's position that TANK has "knowingly allowed" BBC to place benches at TANK bus stops is merely a new gloss on BBC's previous argument that "TANK could have circumvented [Covington's ordinances] by adopting BBC's benches as TANK's own." *Bench Billboard I*, 465 F. App'x at 397. As part of our standing analysis in *Bench Billboard I*, we considered a fully developed evidentiary record and based our holding on the following factual determinations.

First, we found that "that BBC was aware from its prior dealings with TANK that *BBC did not need permission from TANK* to place benches at TANK bus stops." *Id.* at 398 (emphasis in original).[12] The record showed that BBC had addressed two letters to TANK, seeking information on how to request permission from TANK to place benches at TANK bus stops. *Id.* TANK did not respond to BBC's letters, and the district court correctly held that TANK's failure to respond did not constitute an injury-in-fact. *Id.* Second, BBC cited evidence of TANK placing third-party advertising on its bus shelters "at the time BBC was attempting to have TANK put its stamp of authority on the placement of [BBC's] advertising benches at TANK bus stops." *Id.* However, we decided that this evidence did not establish injury-in-fact because "BBC presented no evidence that TANK had authority to permit private corporations to install bench billboards at TANK bus stops

_____

[12]In its opening brief, BBC challenges this statement from *Bench Billboard I* and attempts to reargue the evidence on this point. BBC's Br. 11. Because our conclusion from *Bench Billboard I* is now the law of the case on this issue, BBC must present "exceptional circumstances" to justify reconsideration. *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). BBC has failed to make this showing. Therefore, we decline to revisit our previous assessment of the record evidence.

that would be exempted from local ordinances like O–48–05[13] by virtue of TANK's status as a public utility." *Id.*[14] Finally, we found that "the record evidence supports that TANK cannot authorize placement of *privately owned* benches at TANK bus stops," noting that BBC had placed its benches at TANK bus stops "without TANK's involvement or consent." *Id.* Based on this record evidence, BBC could not prove an injury-in-fact fairly traceable to TANK.

*Bench Billboard I*'s assessment of the record evidence is now the law of the case. The court in *Bench Billboard I* addressed some of the same issues raised in this appeal and considered the same evidentiary record. *Cf. Moss v. United States*, 323 F.3d 445, 457 n.17 (6th Cir. 2003) (declining to apply the law of the case doctrine where prior panel did not possess a fully developed evidentiary record). Specifically, the court found that BBC had adduced no proof that TANK could even permit BBC to place its benches at TANK bus stops much less extend TANK's statutory exemption from local ordinances to BBC's benches.[15] The record actually showed that BBC had

[13]As explained in *Bench Billboard I*, Covington Ordinance O–48–05 was enacted on August 26, 2005, and "prohibited the placement of advertising benches in the public rights-of-way" unless the owner of the bench first obtained a permit from the city. *Bench Billboard I*, 465 F. App'x at 399. BBC opposed the ordinance and filed this action against Covington on April 6, 2006. *Id.* Following the commencement of litigation, Covington repealed O–48–05 and adopted O–2–09, which created several exceptions to the general ban on encroachments on the public right-of-way. *Id.* at 400.

[14]BBC also challenges this statement from *Bench Billboard I* and takes another bite at briefing the issue. BBC's Br. 12. Again our conclusion from *Bench Billboard I* is now the law of the case on this issue, and BBC has not raised any "exceptional circumstance" to warrant reconsideration. *Westside Mothers*, 454 F.3d at 53.

[15]In its reply brief, BBC contends that this court "has previously acknowledged a lack of evidence on this issue." BBC's Reply Br. 2. BBC is presumably referring to our statement in *Bench Billboard I* that "BBC presented no evidence" about TANK's authority to permit BBC to install benches at TANK bus stops. *Bench Billboard I*, 465 F. App'x at 398. BBC seems to confuse a lack of evidence (or the failure to present it) with a fair opportunity to obtain evidence in discovery. To be clear, *Bench Billboard I* assessed the record evidence and concluded that BBC lacked any evidence that TANK had authority to permit private corporations to install bench billboards at TANK stops." *Id.* BBC has given us no reason to find that BBC never had the opportunity to

15

placed its benches at TANK bus stops "without TANK's involvement or consent." *Bench Billboard I*, 465 F. App'x at 398. Each of these findings was a predicate for the court's holding that BBC had suffered no injury-in-fact fairly traceable to TANK. To allow BBC to re-open these issues as part of its opposition to the post-judgment injunction would likely result in the relitigation of factual matters that were already decided in *Bench Billboard I*. Thus, BBC's request poses the risk that the court will reach a "result inconsistent with a prior decision reached in the same case." *In re Kenneth Allen Knight Tr.*, 303 F.3d at 677.

Under the circumstances, we will consider BBC's request for remand only if BBC can show that "exceptional circumstances" exist at this stage of the litigation. *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). The law of the case doctrine precludes reconsideration of a previously decided issue unless one of three "exceptional circumstances" exists: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice. *Id.* For example, the exception based on the availability of new evidence "applies only if the record actually contains new evidence and 'if the new evidence differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision.'" *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 418 F. App'x 430, 435 n.4 (6th Cir. 2011) (quoting *Hamilton v. Leavy*, 322 F.3d 776, 788 (3d Cir. 2003)). BBC has failed to make a showing of "exceptional circumstances" here. BBC does not argue that substantially different evidence is now available or that an intervening change in the law has occurred. *Westside Mothers*, 454 F.3d at 538. Nor has BBC shown that the findings on these

conduct discovery on this issue.

16

issues in *Bench Billboard I* were clearly erroneous and would work a manifest injustice. *Id.* Therefore, we decline to reconsider our previous assessment of the evidence in this case.

Additionally, remand would also be inappropriate because "the precise issue" raised by BBC is not actually relevant to the proper scope of injunctive relief and merely presents a hypothetical question. BBC seeks remand so that the district court can address the merits of "whether TANK can place or allow to be placed structures, such as: (1) transit shelters, with or without signage; and (2) benches, with or without signage, at its bus stops, even though it may be contrary to local zoning ordinances." BBC's Reply Br. 2. However, there is no evidence in the record that TANK placed BBC's benches at TANK bus stops or allowed BBC to place its benches at TANK bus stops. Therefore, TANK's authority to "place or allow to be placed" benches at its bus stops is simply irrelevant. Moreover, Ordinance O–2–09 itself creates an exception for "[a]ny property placed in the right-of-way by a governmental or quasi-governmental agency or body, including but not limited to . . . public transportation shelters [and] benches . . . ." *Bench Billboard I*, 465 F. App'x at 402 (emphasis removed) (quoting Covington, Ky. Ordinance § O–2–09)). The issue raised by BBC about whether TANK can place structures such as shelters or benches "even though it may be contrary to local zoning ordinances" is not actually in controversy in this case and is thus nothing more than hypothetical. *Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 525 (6th Cir. 2012) (noting that federal courts only have jurisdiction over "a live case or controversy" and cannot "offer an advisory opinion, based on hypothetical facts") (citation omitted).

For all of these reasons, BBC has not shown why remand and further consideration of "the precise issue that has never been decided on the merits" in this case is necessary, particularly in light

17

of the law of the case.  Therefore, we decline to remand this case for further proceedings as to the "precise issue" presented by BBC.

## C.

The remaining issue addressed by the district court was BBC's contention below that TANK had acquired the public rights-of-way by eminent domain, and therefore, only TANK had jurisdiction to remove BBC's benches from the property. *Bench Billboard Co.*, 2012 WL 2919158, at *7.  In its brief to the district court, BBC stated, "Neither [the district court nor the *Bench Billboard I* court] questioned that TANK's staking out control of bus stops along the right of ways in Covington and elsewhere in Northern Kentucky could only be described as an exercise of its eminent domain authority."  R. 147, Page I.D. # 2101.  In its memorandum opinion granting Covington's motion for injunctive relief, the district court found no evidence in the record that TANK had ever exercised its eminent domain power under Ky. Rev. Stat. Ann. § 96A.080(3) as to any of its bus stops in Covington.  *Bench Billboard Co.*, 2012 WL 2919158, at *7.[16]  The district court held that while Ky. Rev. Stat. Ann. § 100.324(1) authorized TANK "to install and relocate service facilitie—e.g. bus stops—without the approval of local planning units.  This statute alone

_____

[16] Ky. Rev. Stat. Ann. § 94A.080(3) states that a transit authority

> may, if unable to contract or agree with the owner or owners thereof, acquire real and personal property, franchises, bus certificates, easements and other rights when necessary in and to the accomplishments of the public purposes of the authority, through exercise of the power of eminent domain . . . . Any exercise of such power shall be initiated by resolution of the board of the authority identifying the properties or rights to be acquired, reciting the board's determination that acquisition by such means is necessary, and authorizing initiation of proceedings as required by law; and such resolution of the board of the authority shall not be conclusive of such determination but shall be subject to the approval of the fiscal court or courts of the county or counties in which the property sought to be condemned is located.

18

[did] not confer property rights onto public utilities by transferring ownership over a portion of real property. . . ." *Id.* at *8. In an apparent reversal of its previous position, BBC now admits on appeal that TANK "does not have to go through formal eminent domain proceedings in order to utilize public right of way space for its service facilities" under Ky. Rev. Stat. Ann. § 100.324. BBC's Br. 19. Because BBC has not raised the district court's precise holding on this issue as an assignment of error in this appeal, we need not consider it further. *Turner v. City of Taylor,* 412 F.3d 629, 639 (6th Cir.2005) (holding that issues raised in the district court but not on appeal are considered waived).

### III.

Because BBC has failed to show why the district court's declaratory judgment should not reach BBC's benches placed at TANK bus stops, the district court correctly required BBC to remove its benches from all Covington public rights-of-way pursuant to Ordinance O–2–09. Therefore, the scope of the injunctive relief granted by the district court was not an abuse of discretion. We AFFIRM.